STEELMAN, Judge.
R.H. was born on 15 November 1999. Respondent is her mother. On 14 November 2001, the Mecklenburg County Department of Social Services ("DSS") filed a petition alleging that R.H. was a neglected and dependent juvenile in that she had been abandoned. DSS alleged that respondent had left R.H. with her godmother in order to attend inpatient substance abuse treatment. DSS stated that respondent had been discharged from treatment on 1 November 2001, but her whereabouts were unknown. DSS assumed custody of R.H. by non-secure custody order.
On 12 March 2002, R.H. was adjudicated a neglected anddependent juvenile. The trial court directed DSS to pursue concurrent plans of guardianship and adoption. At the time, respondent's whereabouts were again unknown. Respondent had been partially attending treatment at a shelter, but relapsed. Respondent went into a detox facility in March 2002, and sought inpatient treatment at Dove's Nest. On 10 April 2002, respondent agreed to a case plan to address her history of substance abuse. Respondent also agreed to seek counseling and take parenting classes. However, respondent made "very inconsistent progress" on her case plan. Respondent left North Carolina from July to August, and tested positive for cocaine on 28 August 2002. Respondent eventually entered the Prodigals Community treatment facility in Winston-Salem, North Carolina.
On 24 June 2003, DSS filed a motion to terminate respondent's parental rights. DSS alleged that: (1) R.H. was neglected in that respondent had failed to provide care, supervision and discipline for the child and had abandoned her; (2) respondent had willfully left R.H. in foster care for more than twelve months without showing to the satisfaction of the court that reasonable progress under the circumstances had been made to correct the conditions which led to the child's removal; (3) the child had been in the custody of DSS for six months and respondent had willfully failed to pay a reasonable portion of the cost of child care; (4) respondent had willfully abandoned the child for at least six consecutive months preceding the filing of the petition; (5) respondent's parental rights to her other children had beeninvoluntarily terminated and she lacked the ability to establish a safe home; and (6) R.H. was a dependent juvenile in that respondent was incapable of providing for her proper care and supervision. Accordingly, DSS argued that it was in the best interest of the child that respondent's parental rights be terminated.
On 21 August 2003, a hearing was held on the motion to terminate respondent's parental rights. The trial court found that respondent's parental rights to two of her other children in Virginia had been terminated due to substance abuse problems. The court further found that respondent had signed a case plan which addressed her substance abuse issues, as well as R.H.'s need for permanence, respondent's need for counseling, and need for additional parenting skills. The court found, however, that respondent's progress was "minimal at best and has only been in the area of substance abuse." The court noted that "[t]he child came into custody due to several issues including abandonment, mental health needs, housing, employment and parenting skills. These issues still have not been addressed by the mother." The court further noted that respondent had a history of relapse, and there was no evidence that she would maintain sobriety once she left Prodigals. Finally, the court found that respondent had the ability to contribute financially to the child and had not done so. Thus, the trial court concluded that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), (2), (3), (6) and (9) to terminate respondent's parental rights. The court further concluded that it was in R.H.'s best interest that respondent's parental rights beterminated, stating that she needed stability, was adoptable, and could not wait for her mother to learn appropriate parenting skills or develop a bond with her. Accordingly, respondent's parental rights were terminated. Respondent appeals.
Respondent argues there was insufficient evidence to support the trial court's findings of fact and conclusions of law, and that the trial court erred in concluding that it was in the best interest of the child to terminate her parental rights. Respondent contends that she had made reasonable progress toward reunification through substance abuse treatment and counseling.
After careful review of the record, briefs and contentions of the parties, we affirm. N.C. Gen. Stat. § 7B-1111 sets out the statutory grounds for terminating parental rights. A finding of any one of the separately enumerated grounds is sufficient to support a termination. In re Taylor, 97 N.C. App. 57, 64, 387 S.E.2d 230, 233-34 (1990). The party petitioning for the termination must show by "clear and convincing evidence" that grounds authorizing the termination of parental rights exist. N.C. Gen. Stat. § 7B-1111(b) (2003).
As one of the grounds for terminating parental rights, the court cited N.C. Gen. Stat. § 7B-111(a)(2). This provision states that a trial court may terminate parental rights upon a finding that "the parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions whichled to the removal of the juvenile." N.C. Gen. Stat. § 7B-1111(a)(2) (2003). The twelve-month period referenced in this statute refers to the twelve months leading up to the filing of the petition for termination of parental rights. In re Pierce, 356 N.C. 68, 75, 565 S.E.2d 81, 86 (2002). The trial court may find the parent acted willfully even though they made some attempt to regain custody of the child, where the parent failed to demonstrate reasonable progress or a positive response towards the efforts of the agency attempting to help them. In re Nolen, 117 N.C. App. 693, 700, 453 S.E.2d 220, 225 (1995). "Positive response" means more than the parent made some efforts towards improving the situation which led to the removal of the child. Id. Implicit in the meaning of "positive response" is a requirement that the efforts taken have procured positive results. Id. However, "extremely limited progress is not reasonable progress." Id at 700, 453 S.E.2d at 224-25.
The findings of fact clearly establish that R.H. has been in DSS's care for more than twelve months proceeding the termination of parental rights hearing. Further, those findings demonstrate that her mother willfully left her in foster care during this period. DSS took custody of R.H. because she had been abandoned by respondent while respondent sought substance abuse treatment. When respondent was released from that treatment facility she did not attempt to regain custody of her child.
The trial judge also made findings that respondent had failed to make reasonable progress under the circumstances to correct theconditions which led to the removal of her child. The case plan developed for respondent was designed to address concerns about substance abuse, as well as to provide a permanent residence for the child, provide counseling for respondent to address unresolved issues, and to develop parenting skills. However, the evidence shows that respondent only addressed issues relating to substance abuse. At the time of the hearing, respondent still did not have a permanent residence or paid employment, and had not begun taking parenting classes. Thus, there was clear and convincing evidence in the record to support the trial court's findings and conclusion that respondent had not made sufficient progress towards correcting the conditions that led to R.H.'s removal.
We hold that the trial court's findings of fact were sufficient to support its conclusion that respondent's lack of progress during the twelve months preceding DSS's petition justified termination of her parental rights under section 7B-1111(a)(2). Since grounds exist pursuant to N.C. Gen. Stat. § 7B-1111(a)(2) to support the trial court's order, the remaining grounds found by the trial court to support termination need not be reviewed by this Court. Taylor, 97 N.C. App. at 64, 387 S.E.2d at 233-34.
Once the trial court has found that grounds exist to terminate parental rights, "the court shall issue an order terminating the parental rights of such parent with respect to the juvenile unless the court shall further determine that the best interests of the juvenile require that the parental rights of the parent not beterminated." N.C. Gen. Stat. § 7B-1110(a) (2003). We review the trial court's decision to terminate parental rights applying an abuse of discretion standard. In re Yocum, 158 N.C. App. 198, 206, 580 S.E.2d 399, 404, aff'd per curium, 357 N.C. 568, 597 S.E.2d 674 (2003). Here, the trial court found that R.H. was thriving and an adoptive placement had been located. The trial court further noted that R.H. had spent most of her life in foster care, and respondent was still unable to care for her. Thus, based on respondent's history of substance abuse and relapse, as well as her failure to fully address the court ordered plan for reunification, we conclude that the trial court did not abuse its discretion in determining that termination was in the child's best interest. Accordingly, the order terminating respondent's parental rights is affirmed.
AFFIRMED
Judges HUNTER and ELMORE concur.
Report per Rule 30(e).