DILLON, Judge.
Respondent-Appellant Mother ("Mother") and Respondent-Appellant Father ("Father") (collectively the "Parents") appeal from an order, which was later amended, which terminated their parental rights to "John," "Jem," and "Joe" (collectively "Juveniles").[1] For the following reasons, we affirm.
I. Background
Robeson County Department of Social Services ("DSS") first became involved with Juveniles after receiving reports of Father's substance abuse, Mother's mental health issues, domestic violence, and scarcity of food in the home. In February 2013, DSS obtained non-secure custody of Juveniles on the basis of neglect.
In March 2013, the trial court rendered an oral ruling adjudicating Juveniles neglected. In June 2013, the trial court entered written adjudication and disposition orders continuing custody of Juveniles with DSS.
The trial court held a number of hearings to monitor Parents' progress on their respective Out of Home Family Service Agreements ("the Case Plans") and modify Juveniles' permanent plan ("the Permanent Plan") as needed. Parents experienced trouble complying with the Case Plans. Accordingly, the Permanent Plan was modified from reunification with Mother, then to guardianship with a court-appointed caretaker, and finally to adoption.
On 29 April 2016, the trial court entered an order terminating Parents' parental rights, finding, among other things, that Parents had willfully left Juveniles in foster care for over twelve months without making reasonable progress in correcting the conditions that led to Juveniles' removal. See N.C. Gen. Stat. § 7B-1111(a)(2) (2015). An amended order was filed on 6 May 2016 correcting clerical errors. Parents timely appealed.
II. Standard of Review
We review an order terminating parental rights to determine whether the findings of fact are supported by clear, cogent, and convincing evidence, and whether the findings of fact support the adjudicatory conclusions of law. In re Shepard , 162 N.C. App. 215, 221, 591 S.E.2d 1, 6 (2004). We review the conclusions of law de novo . In re S.N. , 194 N.C. App. 142, 146, 669 S.E.2d 55, 59 (2008), aff'd , 363 N.C. 368, 677 S.E.2d 455 (2009) (per curiam). If we determine that one ground is supported by the findings of fact, we need not address the other grounds found by the court. In re P.L.P. , 173 N.C. App. 1, 8, 618 S.E.2d 241, 246 (2005), aff'd, 360 N.C. 360, 625 S.E.2d 779 (2006) (per curiam). We review the trial court's determination of Juveniles' best interest for abuse of discretion. In re Anderson , 151 N.C. App. 94, 98, 564 S.E.2d 599, 602 (2002).
III. Analysis
Parents contend that the trial court erred by terminating their parental rights on the basis of their failure to make reasonable progress.[2] For the following reasons, we disagree.
Parental rights may be terminated under N.C. Gen. Stat. § 7B-1111(a)(2) if the court finds that there is clear, cogent, and convincing evidence that the parent "willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C. Gen. Stat. § 7B-1111(a)(2). The trial court's order must contain adequate findings of fact as to whether (1) the parent(s) acted willfully and (2) the parent(s) made reasonable progress under the circumstances. See In re C.C. , 173 N.C. App. 375, 384, 618 S.E.2d 813, 819 (2005).
A parent's "prolonged inability to improve her situation, despite some efforts in that direction, will support ... finding[s] of willfulness" and lack of reasonable progress. In re B.S.D.S. , 163 N.C. App. 540, 546, 594 S.E.2d 89, 93 (2004). Reasonable progress is not present if the conditions leading to removal have continued with little or no signs of progress. In re Nolen , 117 N.C. App. 693, 700, 453 S.E.2d 220, 224-25 (1995). "A parent's incarceration is a circumstance that the trial court must consider in determining whether the parent has made reasonable progress." In re C.W. , 182 N.C. App. 214, 226, 641 S.E.2d 725, 733 (2007) (internal quotation marks omitted).
A. Mother's Lack of Progress
DSS and Mother entered into her Case Plan on 4 March 2013 to address lack of stable housing, substance abuse, parenting issues, domestic violence, employment, and mental health. DSS initially became involved with Juveniles after receiving reports of substance abuse, Mother's mental health issues, domestic violence, and scarcity of food in the home. However, despite DSS's best efforts, Mother experienced significant issues complying with her Case Plan.
Over the course of the next two years, Mother would start but never complete four substance abuse treatment programs, testing positive for drugs on at least four occasions. Juveniles reported that during a visit with Mother on or about 8 March 2015, Mother and others were smoking green cigarettes that they were passing around.
Additionally, Mother was unsuccessful in obtaining stable housing. Mother lived with her sister for a short period of time before being evicted. In August 2013, Mother completed an application for public housing, although it is unclear if those efforts materialized into anything concrete. In a conversation with a DSS social worker on 22 September 2014, Mother admitted she was having difficulty establishing housing.
Moreover, apart from receiving two mental health evaluations, there is little evidence Mother addressed her mental health issues.
Lastly, DSS had significant difficulty contacting Mother. Indeed, Mother did not appear for the termination hearing. We hold that there were sufficient evidence and findings of fact supporting termination of Mother's parental rights due to her lack of reasonable progress.
B. Father's Lack of Progress
The findings of fact establish that Father executed his Case Plan some time prior to the termination hearing.[3] Pursuant to his Case Plan, Father agreed to seek services addressing his mental health issues, substance abuse, parenting issues, and child support. While we acknowledge that Father was incarcerated at the time of the termination hearing, see in re P.L.P. , 173 N.C. App. at 10, 618 S.E.2d at 247 ("Incarceration, standing alone, is [not] a sword ... in a termination of parental rights decision." (internal quotation marks omitted)), Father nonetheless failed to make reasonable progress on the conditions leading to removal.
The trial court's findings of fact establish that Father did little to comply with his Case Plan apart from attend anger management, Narcotics Anonymous, and G.E.D. classes, findings which are supported by the evidence. Powell testified that Father never completed any aspect of his Case Plan while he was a Scotland Correctional Institution inmate, despite the fact that Scotland offered drug treatment and mental health therapy services. Overall, other than anger management, DSS social worker Tammy Smith testified that she was not aware of any component of his Case Plan that Father had completed. Father testified that he attended Narcotics Anonymous meetings at Scotland but voluntarily stopped. We hold that the trial court did not err in its determination that Father failed to make reasonable progress.
IV. Conclusion
We conclude that the trial court did not err in determining that Parents willfully left Juveniles "in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C. Gen. Stat. § 7B-1111(a)(2). Having affirmed termination on this basis, it is unnecessary for us to address Parents' remaining arguments concerning the other grounds found by the trial court. In re P.L.P. , 173 N.C. App. at 8, 618 S.E.2d at 246. Therefore, as Parents do not challenge the trial court's determination that it is in Juveniles' best interest that Parents' parental rights be terminated, we affirm the order terminating parental rights.
AFFIRMED.
Report per Rule 30(e).
Judges HUNTER, JR., and DIETZ concur.

John, Jem, and Joe are pseudonyms used to protect Juveniles' identities.

Parents also contend that the other two grounds found by the court are not supported by the findings of fact and evidence.

Powell testified that Father executed his Case Plan on 9 June 2014. However, this evidence was not reflected in the findings of fact.